UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

LORI A. PARKER,

                                          Plaintiff,

    v.                                                          3:10-cv-506 (GLS/ATB)

COMMISSIONER OF SOCIAL SECURITY,

                                          Defendant.
_____

LAURIE M. CEPARANO, ESQ., for Plaintiff
JOANNE JACKSON, Special Asst. U.S. Attorney for Defendant

ANDREW T. BAXTER, U.S. Magistrate Judge

## REPORT-RECOMMENDATION

This matter was referred to me for report and recommendation by the Honorable Gary L. Sharpe, United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d). This case has proceeded in accordance with General Order 18.

**I.    PROCEDURAL HISTORY**

Plaintiff filed[1] an application for Disability Insurance Benefits (DIB) on September 20, 2005, claiming disability since January 27, 1997. (Administrative Transcript ("T.") at 52). Plaintiff's application was denied initially on January 11,

---

[1] In his decision, the Administrative Law Judge (ALJ) stated that plaintiff "protectively filed" her application on September 20, 2005. (T. 11). When used in conjunction with an "application" for benefits, the term "protective filing" indicates that a written statement, "such as a letter," has been filed with the Social Security Administration, indicating the claimant's intent to file a claim for benefits. *See* 20 C.F.R. § 416.340. There are various requirements for this written statement. *Id.* If a proper statement is filed, the Social Security Administration will use the date of the written statement as the filing date of the application even if the formal application is not filed until a future date. Even though plaintiff did not officially file her application until October 24, 2005, the disability transmittal documents reflect the September 20, 2005 date. *See* T. 52.

2006. (T. 19–22), and she requested a hearing before an Administrative Law Judge (ALJ). (T. 23). The hearing, at which plaintiff testified, was conducted on March 13, 2008. (T. 614–626).

In a decision dated April 9, 2008, the ALJ found that plaintiff was not disabled. (T. 11–16). The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on February 26, 2010. (T. 4–6).

## II.  ISSUES IN CONTENTION

Plaintiff makes the following claims. among others:

(1) The ALJ failed to properly apply the treating physician rule. (Pl.'s Br. at 9–12)

(2) The ALJ's determination of plaintiff's residual functional capacity was not based on the medical evidence. (Pl.'s Br. at 12–17).

This court finds, for the reasons below, that the ALJ's residual functional capacity (RFC) determination is not supported by substantial evidence. The court also concludes that the ALJ's credibility determination is not supported by substantial evidence. The court does not find that the case should be reversed for calculation of benefits; but instead, recommends a remand for further consideration.

## III.  APPLICABLE LAW

### A.  Disability Standard

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental

2

impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 1382c(a)(3)(A). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [she] lives, or whether a specific job vacancy exists for [her], or whether [she] would be hired if [she] applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. § 404.1520 (disability insurance benefits) and in 416.920 (SSI) to evaluate both disability insurance and SSI disability claims.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If [she] is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits [her] physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider [her] disabled without considering vocational factors such as age, education, and work experience . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, [she] has the residual functional capacity to perform [her] past work. Finally, if the claimant is unable to perform [her] past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520,

416.920. The plaintiff has the burden of establishing disability at the first four steps. However, if the plaintiff establishes that her impairment prevents her from performing her past work, the burden then shifts to the Commissioner to prove the final step. *Id.*

### B. Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)). A reviewing court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson*, 817 F.2d at 986. In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision. 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted). It must be "more than a scintilla" of evidence scattered throughout the administrative record. *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v.*

*NLRB*, 197 U.S. 229 (1938)); *Williams*, 859 F.2d at 258.

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258. However, a reviewing court may not substitute its interpretation of the administrative record for that of the Commissioner, if the record contains substantial support for the ALJ's decision. *Id*. *See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

## IV. ALJ's DECISION

The ALJ first noted that, although he was required to consider all the medical evidence, in order for plaintiff to qualify for DIB, disability must be established before the plaintiff's last insured date. (T. 14). Thus, for purposes of this case, the ALJ considered whether plaintiff was disabled before March 31, 1999, the date that plaintiff was last insured. *Id.* The ALJ found that plaintiff had not been engaged in substantial gainful activity and had the following severe impairments: "right shoulder impairment and neck pain." (T. 13).

The ALJ then found that plaintiff could perform the full range of light work as described in the Social Security Regulations, 20 C.F.R. § 404.1567(b). (T. 13). In making this determination, the ALJ rejected plaintiff's complaints of disabling pain as "not credible" to the extent that they were inconsistent with the ability to perform light work. (T. 15).

The ALJ relied on medical records from Binghamton General Hospital relating

to two different surgeries on plaintiff's shoulder in May 1997 and July 1999, physical therapy records from February 1997 to November 1999, and an MRI record from March 1997, which indicated persistent pain in plaintiff's right shoulder, but no evidence of other severe impairments. (T. 14–15). The ALJ also considered clinical findings from March 1999 to July 2004, which also indicated pain and limitations of the right shoulder and arm, but "no substantial range of motion limitations and no objective diagnostic corroboration." (T. 15).

The ALJ noted that later treatment records indicated that plaintiff's shoulder condition worsened and that plaintiff developed cervical disc disease and radicular symptoms in her neck, but the ALJ noted that these developed after plaintiff's last insured date. (T. 15). The ALJ also noted that plaintiff received no psychiatric treatment and found no evidence of a severe mental impairment on, or prior to, the last insured date. (T. 15).

## V.   MEDICAL EVIDENCE

Plaintiff underwent surgery on May 12, 1997, and she was diagnosed with chronic impingement syndrome in her right shoulder. (T. 75). Plaintiff's orthopedic surgeon, Dr. David Ellison, observed no rotator cuff tear during the surgery. (T. 75). Dr. Ellison was looking for a rotator cuff tear because an MRI conducted in March 1997 indicated a possibility of a tear or perforation in the rotator cuff due to fluid in the subacromial and subdeltoid bursa. (T. 201). Plaintiff's condition did not improve, and she underwent a similar surgery on July 15, 1999. (T. 81). After the surgery, she was again diagnosed with chronic impingement syndrome and anterior subluxation of

the right shoulder joint. (T. 81). Some inflammation of the rotator cuff was noted, but no rotator cuff tear. (T. 81).

Plaintiff attended physical therapy sessions before and after both surgeries. Overall, plaintiff's condition did not change between February 24, 1997 and September 7, 1999. (*See* T. 88–121). Before the May 12, 1997, surgery, plaintiff met with physical therapist (PT) Virginia Nolan eleven times. (T. 115–121). Plaintiff's physical therapist noted repeatedly that plaintiff had full range of motion in her right shoulder, but with pain. (*See* T. 115–16, 118–19, 121). By June 1997, plaintiff had regained nearly full range of motion, but was still limited by pain. (T. 112). PT Nolan noted in a letter dated August 26, 1997, that "treatment is dictated by pain as much as physical ability . . . [plaintiff] has had excellent return of range of motion . . . radiating pain continues to be her limiting factor." (T. 103).

In a letter dated December 22, 1997, PT Nolan noted that plaintiff had tried to return to work, but the pain made her stop again. (T. 101). PT Nolan also noted that in December 1997, plaintiff had full passive range of motion, but it was painful, and also reported that plaintiff was experiencing "significant pain on both sides of her neck, primarily on the right." (T. 101). In January 1998, PT Nolan noted that plaintiff "probably will not do her previous job." (T. 99).

Plaintiff had an MRI of her cervical spine on May 27, 1998, which revealed a small right paracentral C5–6 disc protrusion with no evidence of neural compression. (T. 200). Plaintiff continued to meet with her physical therapist through May 1999, who repeatedly noted that plaintiff had full range of motion, but with pain. (T. 94,

7

97–99). Plaintiff had another MRI on April 19, 1999, which revealed no evidence of rotator cuff tear, but showed fluid in the subacromial-subdeltoid bursa. (T. 199).

On March 5, 1999, Dr. Ellison diagnosed brachial plexopathy and ulnar plexopathy in plaintiff's right arm, noting that the injury to plaintiff's shoulder had resulted in chronic arm and shoulder pain. (T. 234). Dr. Ellison also noted that plaintiff was having "some problem with depression," and recommended that she see her medial doctor for treatment. (T. 234). Plaintiff had been seeing Dr. Ellison since her first shoulder surgery. (T. 75, *see also* T. 212–34).

After her second shoulder surgery, plaintiff again met with PT Nolan on July 20, 1999, who noted that plaintiff was "able to get to passive 90 degrees flexion of her right shoulder, and 50 degrees abduction." (T. 93). By August 24, 1999, plaintiff had full range of motion, but that motion was "still painful." (T. 89). Plaintiff attended physical therapy regularly until September 7, 1999, at which time the physical therapist noted that plaintiff's shoulder was "very sore," but was "progressing with function," and that plaintiff had "near full passive range of motion of her right shoulder, with pain at ends of ranges." (T. 88).

**VI.   NON-MEDICAL EVIDENCE and TESTIMONY**

Plaintiff testified that she has continual pain in her shoulder that sometimes shoots down her arm and into her hand, causing her hand to sometimes go numb. (T. 620). She testified that the pain also affects her neck. (T. 620). The pain in her neck spreads to her head, causing a headache that typically lasts one to two days. (T. 621). Plaintiff testified that in a given month, headaches cause her to "lose" five to seven

8

days, because she has to "crash," and "totally shut out the world and . . . try to relax my body as much as possible" to ease the headache. (T. 621–22). Half of the medications plaintiff takes regularly are pain medications and muscle relaxers.[2]

Plaintiff testified that she mainly watches television and does puzzles at home to try and keep her mind occupied, and that her husband does almost all of the household cleaning, laundry and shopping. (T. 623–24). Plaintiff testified that she attempts to fold laundry and other light household chores, such as helping wash dishes or light dusting. (T. 624). Plaintiff testified that the heaviest thing she would typically lift or carry around the house was a half gallon of milk, and she would use both of her hands to carry it, because she often drops things for no reason. (T. 624–25). Plaintiff finally testified that the pain and symptoms had, for the most part, remained the same from 1997 to 2008. (T. 625).

## VII. ANALYSIS

### 1. Residual Functional Capacity/Treating Physician

In rendering a residual functional capacity (RFC) determination, the ALJ must consider objective medical facts, diagnoses and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations. 20 C.F.R §§ 404.1545, 416.945. *See Martone v. Apfel*, 70 F. Supp. 2d

---

[2] At the time of the hearing, plaintiff testified that she was prescribed oxycodone (opiod analgesic), hydrocodone (narcotic analgesic), Celebrex (non-steroidal anti-inflammatory drug (NSAID)), Norflex (anticholinergic muscle relaxant), Zanaflex (muscle relaxant), Protonix (gastric acid secretion inhibitor), dicyclomine (treats intestinal hypermotility associated with Irritable Bowel Syndrome), Altace (treats hypertension), verapamil (treats hypertension), Cymbalta (anti-depressant also prescribed to help with pain), and Wellbutrin (antidepressant).

9

145, 150 (N.D.N.Y. 1999) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)). An ALJ must specify the functions plaintiff is capable of performing, and *may not simply make conclusory statements regarding a plaintiff's capacities*. *Martone v. Apfel*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984); *LaPorta v. Bowen*, 737 F. Supp. at 183; *Sullivan v. Secretary of HHS*, 666 F. Supp. 456, 460 (W.D.N.Y. 1987)). RFC can only be established when there is substantial evidence of each physical requirement listed in the regulations. *Id.* The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence. *Trail v. Astrue*, 5:09-CV-1120, 2010 U.S. Dist. LEXIS 100595, 2010 WL 3825629 at *6 (N.D.N.Y. Aug. 17, 2010) (citing Social Security Ruling (SSR) 96-8p, 1996 SSR LEXIS 5, 1996 WL 374184, at *7).

While a treating physician's opinion is not binding on the Commissioner, the opinion must be given controlling weight when it is well supported by medical findings and *not inconsistent with other substantial evidence*. *See Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002); 20 C.F.R. § 416.927(d). If the treating physician's opinion is contradicted by other substantial evidence, the ALJ is *not* required to give the opinion controlling weight. *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). The ALJ must, however, properly analyze the reasons that the report is rejected. *Id.* An ALJ may not arbitrarily substitute his own judgment for competent medical opinion. *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999).

Here, the ALJ found that plaintiff had the physical capability to perform "the

full range of light work." (T. 13). Light work involves lifting no more than 20 pounds at a time, with frequent lifting or carrying of objects weighing up to 10 pounds. 20 C.F.R. § 404.1567 (b). When the weight lifted is "very little," a job is still in the light work category when it requires "a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." *Id.* The regulations also state that in order for an individual to be considered capable of performing a "full or wide range" of light work, she must "have the ability to do substantially all of these activities." *Id.* Finally, if the individual can perform light work, there is a presumption that he or she can do sedentary work, "unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time. *Id.*

In this case, the ALJ relied only upon the treatment records of Dr. Ellison and others at Orthopedic Associates in Exhibit 10F to conclude that "[a]lthough clinical examination does indicate cervical pain, there were not substantial range of motion limitations and no objective diagnostic corroboration." (T. 15). The ALJ cited other medical records,[3] but they were cited to support his conclusion that there was no evidence of severe impairments other than right shoulder impairment and neck pain. (T. 14). The ALJ mentioned records that indicated "a worsening right shoulder condition with radicular symptoms to the neck and cervical disc disease, however these developed after the [plaintiff's] last insured date." (T. 15). The ALJ states that the above reasons support his ultimate finding that, "through the date last insured, the

---

[3] Exhibits 1F, 2F, 3F, 4F, and 5F.

11

[plaintiff] had the residual functional capacity to perform the full range of light work." (T. 13).

This court disagrees. The court would first point out that the ALJ does not make a function by function analysis or discuss specific functions of which plaintiff is capable, other than the general conclusion that she is capable of the full range of light work.

Dr. Kevin Hastings, plaintiff's pain management physician, completed a Medical Assessment of Ability to Do Work-Related Activities (Hastings Assessment) dated March 16, 2006. (T. 302–05). Dr. Hastings indicated that plaintiff could lift a maximum of 5 pounds infrequently, or up to 1/3 of an 8-hour day. (T. 302). Plaintiff was limited to standing or walking for less than one hour and for about 10 minutes without interruption, and sitting for a maximum of 4 hours in an 8-hour day and for 20 minutes without interruption. (T. 303). Dr. Hastings noted that plaintiff "must change positions frequently between laying, sitting, and standing to alleviate pain and spasms in [her right] shoulder, arm, back, and neck. (T. 303). Plaintiff was restricted to never climbing, balancing, crouching, kneeling, crawling, reaching, handling, feeling, and occasionally stooping. (T. 303–04). Plaintiff was not restricted from seeing, hearing, or speaking. (T. 304). Plaintiff also had the following environmental restrictions: no heights, moving machinery, temperature extremes, or vibration. (T. 304). Dr. Hastings also noted that plaintiff "has had this condition since 1997." (T. 305).

As noted above, the Hastings Assessment was completed in 2006, over nine years after plaintiff's accident and seven years after the last insured date. In addition,

Dr. Hastings only started seeing plaintiff in May 2000, also after the last insured date. (T. 420). Because of the time frame in which Dr. Hastings saw plaintiff and the lack of information as to what records he consulted when making the his assessment, it may be of limited assistance to the RFC analysis for the time period preceding the last insured date.

Plaintiff's brief references a Functional Assessment of Work Capabilities for the period between January 27, 1997, and March 1, 1999, which was completed by Dr. Ellison on October 21, 2007.[4] (Pl.'s Br. 6). However, the court cannot evaluate this report, because the report is not in the record and was not relied upon by the ALJ in making his determination.[5]

Given the remedial intent of the Social Security statute and the non-adversarial nature of benefits proceedings, an ALJ has an affirmative duty, even if the claimant is represented by counsel, to develop the medical record if it is incomplete. *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1999); 20 C.F.R. §§ 404.1512(d), 416.912(d). ("We will make every reasonable effort to help you get medical reports from your own medical sources when you give us permission to request the reports.") In furtherance of the duty to develop the record, an ALJ may re-contact medical sources if the evidence received from the treating physician or other medical sources is inadequate

---

[4] Plaintiff's last visit with Dr. Ellison was in 2004. (*See* T. 59, 213).

[5] Plaintiff cites to this record as "Dr. Ellison Medical Assessment of Ability to do Work Related Activities dated 10/21/07" (Pl.'s Br. 6), but does not provide a citation to anywhere in the transcript. After a search of the record, this court cannot find the alleged report, and thus concludes that it is not in the record.

to determine disability, and additional information is needed to reach a determination. 20 C.F.R.§§ 404.1512(e), 416.912(e). On remand, the ALJ should obtain and consider Dr. Ellison's Functional Assessment and should clarify the extent to which Dr. Ellison's 2007 assessment and Dr. Hasting's 2000 assessment were based on medical evidence from the earlier period before the last insured date.

As outlined above, medical records related to the relevant period between January 1997 and October 1999 indicate that plaintiff's chief complaint was shoulder pain that did not improve, despite two surgeries. (*See* T. 74, 78, 88). Plaintiff's progress notes made by her physical therapist, Virginia Nolan, indicate that plaintiff was often able to regain *passive* ranges of motion in her shoulder, but pain was a continual issue. (*See* T. 88–121). Plaintiff was experiencing "persistent pain," "pain in the neck region," "intermittent numbness," and "some problem with depression" as indicated in Dr. Ellison's notes dated March 5, 1999. (T. 234).

Plaintiff had an MRI of her cervical spine on May 27, 1998, due to neck pain radiating to the right arm. (T. 200). The report indicated that plaintiff had a "small right paracentral C5–6 disc protrusion/posterior osteophyte [with n]o evidence of neural compression." (T. 200). Plaintiff's report of her April 19, 1999, MRI noted her history of "chronic right shoulder pain," and fluid within the subacromial-subdeltoid bursa. (T. 199). Four years later, Dr. Thomas Gudas indicated on the report of plaintiff's February 15, 2002 MRI that there was "no significant change in four years." (T. 198). These reports, which are not considered as part of the ALJ's RFC analysis, indicate that plaintiff's shoulder pain was present from 1998 through 2002.

Thus, there is no substantial evidence to support a finding that plaintiff was capable of performing the functions that would enable plaintiff to perform the full range of light work. Therefore, the ALJ's RFC determination was not supported by substantial evidence.

### 2. Pain and Credibility

"An [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons 'with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'" *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (quoting *Gallardo v. Apfel*, No. 96 CIV 9435, 1999 WL 185253, at *5 (S.D.N.Y. March 25, 1999)). To satisfy the substantial evidence rule, the ALJ's credibility assessment must be based on a two step analysis of pertinent evidence in the record. *See* 20 C.F.R. § 404.1529; *see also Foster v. Callahan*, No. 96-CV-1858, 1998 WL 106231, at *5 (N.D.N.Y. March 3, 1998).

First, the ALJ must determine, based upon the claimant's objective medical evidence, whether the medical impairments could reasonably be expected to produce the pain or other symptoms alleged. 20 C.F.R. § 416.929(b). Second, if the medical evidence alone establishes the existence of such impairments, then the ALJ need only evaluate the intensity, persistence, and limiting effects of a claimant's symptoms to determine the extent to which it limits the claimant's capacity to work. *Id.* § 416.929 (c)(1).

When the objective evidence alone does not substantiate the intensity, persistence, or limiting effects of the claimant's symptoms, the ALJ must assess the credibility of the claimant's subjective complaints by considering the record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms. *Id.* § 416.929(c)(3)(i)–(vii).

In this case, the ALJ did not doubt that plaintiff's medically determinable impairments could reasonably be expected to cause plaintiff pain, however, the ALJ determined that the plaintiff's statements as to the intensity, persistence, and limiting effects of her symptoms were not credible to the extent that they were inconsistent with the ALJ's RFC determination. (T. 15). The ALJ is entitled to make credibility determinations as long as he engaged in the proper analysis. The only analysis the ALJ provided as to a credibility determination was the statement that plaintiffs statements were not credible "to the extent that they were inconsistent" with the RFC determination. (T. 15). However, as discussed above, the ALJ's RFC determination was not supported by substantial evidence. The ALJ cites to no other evidence in the record relating to the symptom-related factors he was required to consider. Thus, the ALJ's finding that the pain is not severe enough to preclude plaintiff from performing

light work is not supported by substantial evidence.

### 3. Vocational Expert

In this case, plaintiff argues that the ALJ should have called a vocational expert because of plaintiff's "specific alleged symptoms" of cervical and upper extremity pain and side effects of medication that include fatigue and grogginess. (Pl.'s Br. 19). Plaintiff argues that because the Commissioner accepts that the symptoms are present, "a vocational expert was not only warranted, but mandated by law." (Pl.'s Br. 19). This is incorrect. (*See Bapp v. Bowen*, 802 F.2d 601, 603) (2d Cir. 1986) ("the mere existence of a nonexertional impairment does not automatically require the production of a vocational expert nor preclude reliance on the guidelines"). Only if a plaintiff's non-exertional impairments "significantly limit the range of work" permitted by the plaintiff's exertional limitations, then the ALJ may not use the Medical-Vocational Guidelines exclusively to determine whether plaintiff is disabled. *Bapp v. Bowen*, 802 F.2d at 606. If the plaintiff's range of work is significantly limited by her non-exertional impairments, then the ALJ must present the testimony of a vocational expert or other similar evidence regarding the availability of other work in the national economy that plaintiff can perform. *Id.* A vocational expert may provide testimony regarding the existence of jobs in the national economy and whether a particular claimant may be able to perform any of those jobs given his or her functional limitations. *See Rautio v. Bowen*, 862 F.2d 176, 180 (8th Cir. 1988); *Dumas v. Schweiker*, 712 F.2d 1545, 1553–54 (2d Cir. 1983). If, upon remand, the plaintiff is found to not be capable of the full range of light work, the ALJ may, if necessary, rely

on the opinion of a vocational expert.  20 C.F.R. § 404.1566 (e).

**WHEREFORE,** based on the findings in the above Report, it is hereby

**RECOMMENDED**, that the decision of the Commissioner be **REVERSED** and this case **REMANDED**, pursuant to sentence four of 42 U.S.C. § 405(g), for a proper determination of plaintiff's residual functional capacity to perform her past work and other further proceedings, consistent with this Report.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have 14 days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN 14 DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: February 22, 2011

*Andrew T. Baxter*
Hon. Andrew T. Baxter
U.S. Magistrate Judge